994 P.2d 395

STATE of Arizona, Appellee,

v.

George Roosevelt EAGLE, Appellant.

No. CR–98–0221–PR.

Supreme Court of Arizona.

Feb. 23, 2000.

Janet Napolitano, Attorney General, By Paul J. McMurdie and J.D. Nielsen, Phoenix, Attorneys for Appellee.

Dean W. Trebesch, Maricopa County Public Defender, By Anna M. Unterberger, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

ZLAKET, Chief Justice.

¶ 1 Defendant George Roosevelt Eagle was convicted on two counts of kidnapping, three counts of sexual assault, one count of sexual abuse, and one count of aggravated assault in connection with an attack on two women in their home. Details of these crimes are set forth in *State v. Eagle*, 196 Ariz. 27, 992 P.2d 1122 (App.1998), and need not be repeated here. The trial judge sentenced the defendant to presumptive terms of imprisonment on all counts, with those for the aggravated assault and one of the kidnapping charges running concurrently. The remaining sentences were imposed consecutively. *See id.* at 29 ¶ 7, 992 P.2d at 1124 ¶ 7.

¶ 2 The only issue upon which we granted review is Eagle's claim that consecutive sentences for his kidnapping and sexual assault convictions amount to double jeopardy. At the heart of this argument is the contention that completion of a sexual offense, as enumerated in A.R.S. § 13–1304(A)(3), constitutes an *element* of "class 2 kidnapping" under § 13–1304(B). Therefore, the defendant asserts, both crimes essentially amount to the "same offense," for which he may not be punished twice.

¶ 3 A.R.S. § 13–1304 reads as follows:

A. A person commits kidnapping by knowingly restraining another person with the intent to:

1. Hold the victim for ransom, as a shield or hostage; or

2. Hold the victim for involuntary servitude; or

3. Inflict death, physical injury *or a sexual offense on the victim*, or to otherwise aid in the commission of a felony; or

4. Place the victim or a third person in reasonable apprehension of imminent physical injury to the victim or such third person.

5. Interfere with the performance of a governmental or political function.

6. Seize or exercise control over any airplane, train, bus, ship or other vehicle.

B. Kidnapping is a class 2 felony unless the victim is released voluntarily by the defendant without physical injury in a safe place prior to arrest and *prior to accomplishing any of the further enumerated offenses in subsection A of this section* in which case it is a class 4 felony. If the victim is released pursuant to an agreement with the state and without any physical injury, it is a class 3 felony. If the victim is under fifteen years of age kidnapping is a class 2 felony punishable pursuant to § 13–604.01. The sentence for kidnapping of a victim under fifteen years of age shall run consecutively to any other sentence imposed on the defendant and to any undischarged term of imprisonment of the defendant.

(Emphasis added).

¶ 4 Division One of the Court of Appeals upheld Eagle's convictions and sentences, concluding that kidnapping is a completed class 2 felony once the requirements of § 13–1304(A) have been satisfied. According to that court, the language in subsection (B) classifies the crime for sentencing purposes, but "[t]he classification of the particular kidnapping offense ... does not alter the statutory elements of the crime of kidnapping." *Eagle*, 196 Ariz. at 32, 992 P.2d at 1127 (¶ 22). The court also found that there is no such thing as "second-degree kidnapping" in Arizona, *id.* ¶ 23, expressly disagreeing with *State v. Sterling*, a Division Two opinion holding that "the voluntary release by the defendant without physical injury of the victim in a safe place prior to arrest is an *element of the offense of second-degree kidnapping.*" 148 Ariz. 134, 136, 713 P.2d 335, 337 (App.1985) (emphasis added). We grant-

ed review to resolve this conflict and now substantially adopt Division One's resolution of the matter. In doing so, we expressly disapprove of *Sterling* 's holding on this issue.

## Double Jeopardy

¶ 5 Eagle argues that his consecutive sentences violate both the state and federal Double Jeopardy Clauses. The former provides that a person may not "be twice put in jeopardy for the same offense." Ariz. Const. art. II, § 10. The latter guarantees that one may not "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Because the two clauses have been held to grant the same protection to criminal defendants, we need only analyze Eagle's claim under the federal provision. *See State v. Cook,* 185 Ariz. 358, 365, 916 P.2d 1074, 1081 (App.1995) ("[T]here is no indication that there is a different double jeopardy analysis under the Arizona Constitution."); *Hernandez v. Superior Court,* 179 Ariz. 515, 522, 880 P.2d 735, 742 (App. 1994) ("Arizona's courts generally interpret this clause 'in conformity to the interpretation given by the United States Supreme Court to the [federal Double Jeopardy] [C]lause ....' ").

¶ 6 The Double Jeopardy Clause prohibits the imposition of multiple punishments for the same offense. *See Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980). Thus, courts will generally presume that the legislature did not intend to authorize cumulative or consecutive sentences when two statutory provisions proscribe the same conduct. *See id.* at 692, 100 S.Ct. at 1438. On the other hand, when statutes describe different offenses, consecutive sentences are permissible without implicating the prohibition against double jeopardy. *See id.* at 693, 100 S.Ct. at 1438. In deciding whether a defendant has been punished twice for the same offense, it

is necessary to examine the elements of the crimes for which the individual was sentenced and determine "whether each [offense] requires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Thus, in evaluating Eagle's double jeopardy claim, we must decide whether our kidnapping and sexual assault statutes each contain an element not present in the other.

## The Arizona Kidnapping Statute

¶ 7 A convenient starting point for our analysis is the formal title of A.R.S. § 13–1304, which reads, "Kidnapping; classification; consecutive sentence." Although "headings are not part of the law itself, where an ambiguity exists the title may be used to aid in the interpretation of the statute." *State v. Barnett,* 142 Ariz. 592, 597, 691 P.2d 683, 688 (1984). We think there is little, if any, ambiguity here. Nevertheless, the title clearly distinguishes, as does the statute itself, the crime of kidnapping from its classification. Subsection (A) of the text completely defines the crime of kidnapping as it exists in Arizona. Its elements are plainly set forth: a knowing restraint coupled with one or more of the specifically listed intentions. In the present context, it is only the *intent* to commit a sexual offense on the victim that is required to complete the kidnapping. The sexual offense itself need not be brought to fruition.

¶ 8 Subsection (B) deals entirely with classifications of punishment. Its language presupposes that the required elements of a kidnapping, as set forth in subsection (A), have been proven. The crime is punishable as a class 2 felony *unless* certain mitigating but nonessential conditions are found, in which case it may be punished less severely.[1]

¶ 9 As the defendant would have us read the statute, the *absence* of § 13–1304(B) fac-

---

1. Subsection (B) also identifies as an aggravating circumstance the fact that the victim is under 15 years of age. We are mindful that the Constitution sometimes requires facts that increase punishment to be treated as elements of the crime, not merely as sentencing factors. *Compare Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215,

143 L.Ed.2d 311 (1999), *with McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). Because the issue is not before us, we express no opinion whether the aggravating factor contained in A.R.S. § 13–1304(B) must be treated as an element of the offense.

tors, not their presence, would constitute elements of "class 2 kidnapping" that must be charged and proven to a jury beyond a reasonable doubt. *Cf. Jones v. United States,* 526 U.S. 227, 234, 119 S.Ct. 1215, 1220, 143 L.Ed.2d 311 (1999). Thus, the state would have to establish one or more negatives: that the defendant did *not* voluntarily release the victim; that the victim was *not* without physical injury; that the victim was *not* released in a safe place prior to arrest; and that the victim was *not* released prior to the accomplishment of an enumerated offense. *See* A.R.S. § 13–1304(B).

¶ 10 We reject this reading of the statute. If the legislature's intent was to create separate crimes having distinct "elements," it could easily have said so in clear, direct, and positive language. Instead, as we have noted, the legislature chose to define a single crime known as kidnapping, and to treat it presumptively as a class 2 felony. "Degrees" of kidnapping are nowhere mentioned. *Cf.* A.R.S. §§ 13–1104, 13–1105 (setting forth second degree murder and first degree murder, respectively); A.R.S. §§ 13–1203, 13–1204 (defining the crimes of assault and aggravated assault, respectively); A.R.S. §§ 13–1902, 13–1903, 13–1904 (defining robbery, aggravated robbery, and armed robbery, respectively). The clause beginning with "unless," and the rest of the first sentence of section 1304(B), deals with factors that could change the classification and thus alter a defendant's exposure, but the elements of the crime remain the same. *See Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977) (concluding that if a legislature chooses to recognize a factor that lessens the degree of criminality or punishment, due process "does not require the State to prove its nonexistence in each case in which the fact is put at issue").

¶ 11 Interestingly, Division Two of the Court of Appeals seems to have followed similar reasoning in *State v. Mendibles,* 126 Ariz. 218, 613 P.2d 1274 (App.1980), a case not expressly overruled by its later *Sterling* decision. In *Mendibles,* the court upheld a conviction for unlawful imprisonment, a lesser included charge of kidnapping. The relevant subsection in the applicable statute is

almost identical to § 13–1304(B). It reads: "Unlawful imprisonment is a class 6 felony unless the victim is released voluntarily by the defendant without physical injury in a safe place prior to arrest in which case it is a class 1 misdemeanor." A.R.S. § 13–1303(C). The court of appeals concluded that the trial court properly refused to submit a special interrogatory to the jury because "there was no evidence the victim was released voluntarily." *Mendibles,* 126 Ariz. at 219, 613 P.2d at 1275. Clearly, the court believed that the safe release of the victim was a mitigator for which the defendant had the burden of presenting evidence. If this factor had been an "element" of the crime, the complete absence of proof would presumably have required the court to set aside altogether the defendant's "class 6" conviction.

¶ 12 In *Rainwater v. State,* 189 Ariz. 367, 943 P.2d 727 (1997), we observed that "[k]idnapping remains a class 2 felony and was made subject to the two-step reduction as an expression of legislative policy to encourage the voluntary and safe release of victims by their kidnappers before actual injury or death might occur," thus attempting to dispel the notion that "kidnapping is presumptively a class 4 felony ... and is raised to class 2 if the victim is not voluntarily and safely released." *Id.* at 368, 943 P.2d at 728; *see also State v. Atwood,* 171 Ariz. 576, 661–63, 832 P.2d 593, 678–80 (1992) (Corcoran, J., specially concurring) (rejecting *Sterling*'s reading of the statute, stating that the prosecution needs to prove only those elements contained in § 1304(A) to convict the defendant of kidnapping). Once an accused is convicted of kidnapping, he is eligible for a reduction in sentence if the evidence shows that he: 1) voluntarily released the victim; 2) without physical injury; 3) in a safe place; 4) prior to arrest; and 5) before committing any of the enumerated offenses in § 13–1304(A). *See* A.R.S. § 13–1304(B). The classification of the crime may be lessened only when all of these conditions are met.

¶ 13 Other states have reached similar conclusions. In 1980, the Supreme Court of North Carolina considered a kidnapping stat-

ute very similar to ours.[2] *See State v. Brady,* 299 N.C. 547, 264 S.E.2d 66 (1980). The court held that subsection (b) of the statute "merely prescribes the punishment for one convicted of kidnapping. It does not affect the elements of the offense of kidnapping or create a separate offense." *Id.* at 75. Courts in Nebraska, Ohio, and Wyoming have held similar statutory provisions to mean that such circumstances need not be alleged or proven by the prosecution. *See State v. Becerra,* 253 Neb. 653, 573 N.W.2d 397, 404 (1998); *State v. Schneckloth,* 210 Neb. 144, 313 N.W.2d 438, 444 (1981); *State v. Leslie,* 14 Ohio App.3d 343, 471 N.E.2d 503, 506 (1984); *Loomer v. State,* 768 P.2d 1042, 1046–47 (Wyo.1989).

¶ 14  We recognize that states may lack "the discretion to omit 'traditional' elements from the definition of crimes and instead to require the accused to disprove such elements." *Jones,* 526 U.S. at 242, 119 S.Ct. at 1223. Here, however, the Arizona legislature has not removed a traditional element from the crime of kidnapping. At common law, kidnapping involved the forcible taking of a person to another country, usually to be used for labor. *See* John L. Diamond, *Kidnapping: A Modern Definition,* 13 Am. J.Crim. L. 1, 2–3 (1985). Consistent with the common law view, most modern definitions of the offense still focus on movement or confinement of the victim. *See id.* at 3.

¶ 15  As noted above, other states with similar kidnapping statutes have held that voluntary release factors are not elements of the crime. Indeed, some jurisdictions specifically identify such considerations as sentencing factors or as affirmative defenses. *See, e.g.,* Alaska Stat. § 11.41.300(d) (affirmative defense); Ark.Code Ann. § 5–11–102(b) (defendant has burden to show victim was voluntarily released alive and in a safe place); Haw.Rev.Stat. § 707–720(3) (affirmative defense); Me.Rev.Stat. Ann. tit. 17–A, § 301(3) (affirmative defense); Tex. Penal Code Ann. § 20.04(d) (defendant may raise issue at "punishment stage").

¶ 16  Admittedly, a few states have provided that harm to the victim or completion

of an enumerated offense *are* elements of an aggravated form of kidnapping, *see, e.g.,* Del. Code Ann. tit. 11, § 783A(6), or have interpreted their statutes as defining those factors as elements, *see, e.g., State v. LaRose,* 127 N.H. 146, 497 A.2d 1224, 1231 (1985) (holding that serious bodily injury is an element of class A kidnapping); *State v. Rojo,* 126 N.M. 438, 971 P.2d 829, 837 (1998) (listing "great bodily harm" as an element of aggravated kidnapping). However, the inconsistent treatment these circumstances have received only bolsters our conclusion that they are not traditional elements of the crime. *Cf. State v. Hurley,* 154 Ariz. 124, 131, 741 P.2d 257, 264 (1987) (holding that release status was a sentencing factor and that the legislature did not change "the elements to avoid having to prove a traditional or logical component of the crime beyond a reasonable doubt").

¶ 17  We hold that the voluntary release of a victim "without physical injury in a safe place prior to arrest and prior to accomplishing any of the ... enumerated offenses in subsection A," is a mitigating factor relevant solely for sentencing purposes. A.R.S. § 13–1304(B). Because the defendant alone benefits from the presence of mitigating circumstances, it is proper to place the burden of proving them on the defense. *See Walton v. Arizona,* 497 U.S. 639, 650, 110 S.Ct. 3047, 3055, 111 L.Ed.2d 511 (1990) (approving Arizona's capital sentencing scheme, which requires the defendant to prove the presence of mitigating circumstances). As with other mitigators, proof by a mere preponderance of the evidence is all that the law requires. *See State v. Spears,* 184 Ariz. 277, 293, 908 P.2d 1062, 1078 (1996).

¶ 18  Because we find that sexual assault is not an element of "class 2 kidnapping," we can easily dispose of Eagle's double jeopardy claim. The two statutes define distinct crimes under the *Blockburger* test, *see* 284 U.S. at 304, 52 S.Ct. at 182, because each offense requires proof of an element that the other does not: the sexual assault statute

---

**2.** Thereafter, the legislature of North Carolina amended the statute, effective July 1, 1981, to specifically create two different classes of kidnapping. *See* N.C. Gen.Stat. § 14–39(b).

does not require a knowing restraint, *see* A.R.S. § 13–1406, and the kidnapping statute does not require non-consensual sexual intercourse, *see* A.R.S. § 13–1304. Thus, Eagle was not punished twice for the same offense.

¶ 19   In sum, a jury found the defendant guilty of both crimes beyond a reasonable doubt. He was properly sentenced on the kidnapping charges according to the guidelines for a class 2 felony. It was within the trial judge's discretion to impose consecutive sentences for the kidnapping and sexual assault offenses. The judgments of the trial court and of the court of appeals are affirmed.

CONCURRING: CHARLES E. JONES, Vice Chief Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice.

FELDMAN, Justice, concurring in part, dissenting in part.

¶ 20   The kidnapping was complete when Defendant restrained the victims "with the intent" to inflict a sexual offense. A.R.S. § 13–1304(A)(3). The later sexual offenses in a different room were separate and complete crimes apart from the kidnapping. Thus, I agree that the consecutive sentences imposed on Defendant did not constitute double jeopardy. I am not able to agree, however, with the court's views regarding the elements of the offense of kidnapping.

¶ 21   Under A.R.S. § 13–1304, kidnapping is a class 2 felony unless the "victim is released voluntarily ... without physical injury in a safe place prior to [the defendant's] arrest." In such case, the crime is a class 4 felony. A.R.S. § 13–1304(B). The difference in severity of punishment between a class 2 and class 4 felony is substantial. The former is punishable by imprisonment for five years and the latter for two and one-half years. A.R.S. § 13–701; *see also* A.R.S. § 13–604 (increasing punishment for recidivists). Nevertheless, the court holds today that proof of whether the victim was released unharmed is not an element of the crime of kidnapping.

¶ 22   The significance of the court's holding is this: if failure to voluntarily release the victim, unharmed and in a safe place, is not an element of the crime, then the state need not prove beyond a reasonable doubt that the victim was harmed, the release was involuntary, or release was not made in a safe place. Further, the court need not submit these questions to the jury but may, instead, find these facts itself and thus determine whether the defendant is guilty of a class 2 or only a class 4 felony. But if these factual matters are elements of the crime described as second-degree kidnapping, then due process is violated if the state is not given the burden to prove these matters to the jury beyond a reasonable doubt. This, indeed, was the holding in *State v. Sterling,* 148 Ariz. 134, 713 P.2d 335 (App.1985).

¶ 23   The court today rejects *Sterling,* adopting instead the view that kidnapping is a single crime, that it is a class 2 felony, and that voluntary release of the victim, unharmed and in a safe place, is a mitigating factor that the defendant may try to establish. *See* majority opinion at ¶¶ 10 and 13. Thus, the court concludes, the group of facts in question is "a mitigating factor relevant solely for sentencing purposes" and that "it is proper to place the burden of proving them on the defendant." *Id.* at ¶ 18. But due process may still require the state to bear the burden of disproving a factor that reduces or justifies a crime. *See State v. Duarte,* 165 Ariz. 230, 798 P.2d 368 (1990) (in murder prosecution in which there is any evidence of self-defense, state has burden of proving beyond a reasonable doubt that defendant did not act in self-defense).

¶ 24   It is true, as the majority notes, that the legislature wrote § 13–1304 to define the single crime of kidnapping, treated it as a class 2 felony, and worded the statute so that voluntary release, unharmed and in a safe place, was a mitigator that reduced the crime to a class 4 felony. *See* majority opinion at ¶¶ 11 and 13. Thus, the majority's reasoning is quite logical, its conclusion quite reasonable, and possibly—perhaps even probably— correct. But as the court notes, if the crime of kidnapping had been designated a class 4 felony, aggravated to class 2 if the defendant failed to voluntarily release the victim unharmed and in a safe place, those same facts

would be aggravators and might thus become elements the state would have the burden of proving to a jury beyond a reasonable doubt. *See* majority opinion at ¶ 9 and n. 1.

¶ 25 I do not agree the question can be answered solely by looking to see whether the statute labels the facts to be found as aggravators or mitigators. Think of this scenario painted by Justice Scalia:

> I do not believe that [the] distinction [between elements and sentencing factors] is (as the Court seems to assume) simply a matter of the label affixed to each fact by the legislature. Suppose that a State repealed all of the violent crimes in its criminal code and replaced them with only one offense, "knowingly causing injury to another," bearing a penalty of 30 days in prison, but subject to a series of "sentencing enhancements" authorizing additional punishment up to life imprisonment or death on the basis of various levels of mens rea, severity of injury, and other surrounding circumstances. Could the state then grant the defendant a jury trial, with requirement of proof beyond a reasonable doubt, solely on the question whether he "knowingly cause[d] injury to another," but leave it for the judge to determine by a preponderance of the evidence whether the defendant acted intentionally or accidentally, whether he used a deadly weapon, and whether the victim ultimately died from the injury the defendant inflicted? If the protections extended to criminal defendants by the Bill of Rights can be so easily circumvented, most of them would be, to borrow a phrase from Justice Field, "vain and idle enactment[s], which accomplished nothing, and most unnecessarily excited Congress and the people on [their] passage."

*Monge v. California,* 524 U.S. 721, 737, 118 S.Ct. 2246, 2255, 141 L.Ed.2d 615 (1998) (Scalia, J., dissenting) (quoting *Slaughter–House Cases,* 83 U.S. 36, 16 Wall. 36, 96, 21 L.Ed. 394 (1892)).

¶ 26 Justice Scalia's comments are, of course, just as relevant to the mitigators in

the present case as the enhancers in *Monge.* Could Arizona establish one violent crime— "knowingly causing injury to another"—punishable as a class 1 felony, subject only to a wide variety of factors that would reduce punishment to lesser levels by a series of sentencing mitigators to be determined by the judge and not the jury?

¶ 27 Unfortunately, we cannot find an answer in the United States Supreme Court's decisions. Its jurisprudence on the issue is conflicting at best. It serves no purpose to review the decisions here. They are discussed in detail in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (invoking doctrine of constitutional doubt, Court treats enhancing factor of serious bodily harm to victim of carjacking as element of crime); *Monge,* 524 U.S. at 727–31, 118 S.Ct. at 2250–51 (recidivism enhancer is sentencing factor). It is puzzling that the question of bodily harm becomes an element of the crime, so that the state must prove it beyond a reasonable doubt and to a jury, when labeled as an enhancing factor but, as in the present case, not when labeled as a mitigating factor.

¶ 28 Another recent case involving a charge of unlawful possession of a firearm presents the question of whether proof of a so-called hate crime motive was a sentencing factor or must be treated as an element of the crime. *New Jersey v. Apprendi,* 159 N.J. 7, 731 A.2d 485 (1998). The New Jersey court held that the question of whether racial animus was the motive for the crime need not be treated as an element, so the state did not have the burden of proving it to a jury beyond a reasonable doubt. Instead, the judge could make the finding and increase the sentence accordingly. *Id.* at 494–95.[3] The United States Supreme Court has now granted certiorari. *Apprendi v. New Jersey,* — U.S. ——, 120 S.Ct. 525, 145 L.Ed.2d 407. Hopefully, the Court will tell us by summer how to differentiate between an element and an enhancer or mitigator.

¶ 29 Until then, I would be inclined to follow *Sterling* [4] because the presence or ab-

---

3. Florida has reached the opposite conclusion. *Florida v. Stalder,* 630 So.2d 1072 (Fla.1994).

4. New Jersey has reached the same result as *Sterling* on a statute almost identical to the one

sence of the factors involving release of the victim make a significant difference in sentencing and because the nature of the factors in question—whether the release was voluntary, whether the victim suffered harm, whether the victim was released in a safe place—requires determination of factual issues that are case-specific and are the types of factors traditionally reserved for jury determination. *Cf. State v. Hurley,* 154 Ariz. 124, 130–31, 741 P.2d 257, 263–64 (1987) (we will interpret Arizona's double jeopardy clause in accordance with federal model; release status, usually determined by documentary evidence, is enhancing factor that applies across the board to all crimes and therefore is not element of offenses of armed robbery or aggravated assault).

in question in this case. *See State v. Federico,* 198 N.J.Super. 120, 486 A.2d 882 (1984).