NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

v.

CARL DONOVAN ALLEN,
*Appellant*.

No. 1 CA-CR 20-0578
1 CA-CR 20-0367
(Consolidated)
FILED 12-23-2021

Appeal from the Superior Court in Maricopa County
No.  CR2014-137638-001
CR2014-145058-002
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Jennifer B. Campbell joined.

---

**M O R S E**, Judge:

¶1        Carl Allen ("Allen") appeals his convictions and sentences for burglary, aggravated assault, and kidnapping.  Allen also appeals a probation violation matter.  We consolidated the appeals.  After searching the record, Allen's defense counsel identified no arguable question of law.  Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), defense counsel asked this Court to search the record for fundamental error.  We invited Allen to file a supplemental brief in propria persona, but he did not.  After reviewing the entire record, we requested and received supplemental briefing under *Penson v. Ohio*, 488 U.S. 75 (1988), on whether the evidence supported one of Allen's kidnapping convictions.  Finding no reversible error, we affirm Allen's convictions and sentences.

### FACTS AND PROCEDURAL BACKGROUND

¶2        "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Valencia,* 186 Ariz. 493, 495 (App. 1996).

¶3        In September 2014, Allen stole a variety of weapons from A.H., allegedly as collateral for a debt.  A few days later, Allen, his brother Tolly Allen ("Tolly"), his aunt Marquinta Allen ("Marquinta"), and Kristoffer Hadden, went back to the apartment where A.H. lived with his daughter S.M.  Also present were S.M.'s boyfriend, "KB," and another man.  While Marquinta waited in the car, Tolly and Allen entered the victim's apartment by breaking through a sliding-glass door.  Tolly threatened A.H. with a sword and Allen threatened S.M. with a baseball bat.

¶4        S.M. and KB barricaded themselves in S.M.'s bedroom.  While KB held the door closed, S.M. called 911.  In a scene undoubtably reminiscent of *The Shining*,[1] Allen used the bat to break a large hole in the

---

[1]        *The Shining* (Warner Bros. 1980).

door. While Allen was trying to break down the door, S.M. was unable to leave her room.

¶5         Police responded and arrested Allen and Tolly as they attempted to flee. Police also arrested Marquinta and Hadden. Police recovered a dagger, hatchet, kitchen knife, baseball bats, and samurai swords from Marquita's car.

¶6         In CR2014-145058-002, the State charged Allen with burglary (Count 1), aggravated assault (Counts 2 and 4), and kidnapping (Counts 3 and 5). *See* A.R.S. §§ 13-1204(A)(2), -1304(A)(3), and -1508.

¶7         The case proceeded to trial in February 2015. However, on the second day of trial the prosecutor became ill and requested a continuance. The court also excused a juror from the panel. The court was unable to schedule a continuance with the remaining jurors and, as a result, declared a mistrial.

¶8         A second trial commenced in March 2015. Allen and his brother Tolly were tried together. After opening statements, Allen moved to sever his case from Tolly's based on their separate defense strategies. The court denied the motion.

¶9         The State presented testimony from two police officers and the two victims. After the State rested, Allen's counsel moved for judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20. The court denied the motion, reasoning that the State presented sufficient evidence to meet the elements for all counts. Allen did not testify, but the defense called Allen's mother, his sister-in-law, and a police officer as witnesses.

¶10         The jury found Allen and Tolly guilty on all five counts. The jury also found that Allen committed the offenses while on probation and with the presence of an accomplice. The jury further found that Counts 1-2 and 4-5 were dangerous offenses.[2]

¶11         The trial court conducted the sentencing hearing in compliance with Allen's constitutional rights and Rule 26. The court sentenced Allen to concurrent prison terms on all five counts, the longest of

---

[2]         Marquinta and Hadden pled guilty to burglary in separate proceedings.

which was 10.5 years. The sentences were imposed consecutively to the probation revocation matter in CR2014-137638.

¶12 On the probation matter, the court found Allen in violation of his probation due to his convictions in the CR2014-145058-002 case. In CR2014-137638, the court sentenced Allen to 1 year in prison with 228 days of presentence incarceration credit.

¶13 With the trial court's permission, Allen filed a delayed notice of appeal in 2020. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I. Kidnapping S.M.

¶14 We requested additional briefing to ascertain whether the State presented sufficient evidence to support the "restrained" element required to sustain Allen's kidnapping conviction.

¶15 Arizona law defines kidnapping as "knowingly restraining another person with the intent to . . . aid in the commission of a felony." A.R.S. § 13-1304(A)(3). "'Restrain' means to restrict a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another <u>or by confining such person</u>." A.R.S. § 13-1301(2) (emphasis added). "Restraint is without consent if it is accomplished by: (a) Physical force, intimidation or deception . . . ." *Id.* "Confine" is not defined by statute but can mean "[t]o keep within bounds" or "[t]o restrict movement." Webster's II New College Dictionary 236 (2001); *see State v. Barnett*, 142 Ariz. 592, 597 (1984) (citing another definition of "confine" from Webster's New Collegiate Dictionary (1973)); *see also Parsons v. Ryan*, 912 F.3d 486, 504 (9th Cir. 2018) ("Confinement, of course, connotes a lack of control over whether to leave a particular place.").

¶16 Our Supreme Court stated that "there are three elements of restraint: without consent, without legal authority, and in a manner that substantially interferes with the victim's liberty." *State v. Styers*, 177 Ariz. 104, 111 (1993). Restraint need not be accomplished by physical contact, and "so long as the [victim feels] compelled by fear to remain, the confinement continue[s]." *State v. Jones*, 185 Ariz. 403, 407 (App. 1995) (citation omitted); *see also State v. Latham*, 223 Ariz. 70, 74, ¶ 20 (App. 2009) ("Kidnapping is accomplished when a defendant's threat or intimidation causes a victim to move from one place to another against her will."). Thus,

a defendant need not "have moved the victim any minimum distance or confined the victim for any minimum period of time, as long as the restraint substantially interfered with the victim's liberty." *State v. Dutra*, 245 Ariz. 180, 182, ¶ 12 (App. 2018). The restraint ends if the victim escapes, *see State v. Scott*, 243 Ariz. 183, 186, ¶ 12 (App. 2017), and a victim is not restrained if they successfully run and hide from an attempted kidnapper, *see State v. McMillen*, 154 Ariz. 322, 323-24 (App. 1987), *disapproved of on other grounds by Rainwater v. State*, 189 Ariz. 367 (1997).

¶17 At trial, the State's theory of the case focused on S.M.'s need to "barricade herself in her room" and that, once there, Allen had "trapped" S.M. Allen argues on appeal that he did not "confine" S.M.—she moved to, and remained in, the bedroom of her own volition—and, thus, he did not interfere with her liberty. In its supplemental brief, the State relies on two cases where this Court addressed kidnapping without physical restraint.

¶18 In *State v. Dunbar*, the defendant parked in front of the victim's car, blocking her escape, before shooting her. 249 Ariz. 37, 42, ¶ 3 (App. 2020). On appeal, we rejected Dunbar's argument that the victim was "not substantially restrained because she could have attempted to maneuver her car around Dunbar's . . . or fled the scene on foot[.]" *Id.* at 46, ¶ 21. This Court held that even if the victim "arguably could have taken extraordinary measures to escape [that] does not change the fact that she was confined." *Id.* We observed that a "reasonable jury could conclude Dunbar's actions substantially interfered with R.W.'s liberty if it concluded that Dunbar's placement of the car and refusal to move out of the way compelled R.W. to forgo the protection of her car and the chance to flee on foot, or navigate around his car." *Id.* (citing *Dutra*, 245 Ariz. at 184, ¶ 19).

¶19 In *Dutra*, the defendant brandished a stun gun at a sandwich shop clerk demanding "the money." 245 Ariz. at 181, ¶ 2. We held that the jury could convict the defendant if it found that he "compelled [the victim] to forgo the chance to flee out the back of the restaurant and instead remain at the counter with the defendant. The period of confinement, though brief, was effectively absolute because it was mandated by Dutra's threatening act and verbal command." *Id.* at 184, ¶ 19.

¶20 Based on the record presented, the jury could reasonably have found that Allen confined S.M. through intimidation with the baseball bat compelling her to remain locked in the bedroom with KB and depriving her of the opportunity to flee the house. *See id.* at 183, ¶ 15 (concluding that victim was "confined" behind the counter by threatening use of the stun gun). Thus, a reasonable jury could conclude that Allen "confined" S.M.

¶21 Once in the bedroom, a reasonable jury could conclude that S.M. was unable to leave without risking physical violence at the hands of the baseball-bat-brandishing Allen. *See id.* at 184, ¶ 19 ("When restraint is accomplished by word or deed that threatens serious injury or death, even if the compelled movement is not far or the compelled confinement is not lengthy, the restraint may be substantial."). Although the bedroom had windows, the jury heard testimony that the windows were covered with security bars. And even without bars, the possibility of extraordinary escape does not mean that a victim is not confined. *See Dunbar*, 249 Ariz. at 46-47, ¶ 21. Accordingly, the record reflects that Allen's intimidation with the baseball bat, followed by his violent attempt to enter the bedroom, substantially interfered with S.M.'s liberty.

¶22 Allen argues that *Dutra* is distinguishable because it involved a minor and the statute provides that the acquiescence of a victim under 18 years old "qualifies as a restraint." But the age of the victim is only relevant to the "without consent" element of "Restrain." *See* A.R.S. § 13-1301(2)(b). Here, Allen intimidated S.M. with a baseball bat and he cannot plausibly argue that S.M. consented to the restraint.

¶23 Allen also asserts that "'[m]oving such person from one place to another' does not mean 'causes such person to move from one place to another.'" We need not address this issue because the evidence supports that Allen "confined" S.M. *See* A.R.S. § 13-1301(2) (providing restraint can be accomplished through movement *or* confinement).

¶24 We conclude there is sufficient evidence in the record to support that Allen restrained and kidnapped S.M.

## II.    Fundamental Error Review.

¶25 After our review of the record for fundamental error, *see Leon*, 104 Ariz. at 300, we found no other issues. All the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and the record reveals that counsel represented Allen at all stages of the proceedings. Ariz. R. Crim. P. 19.2. There was sufficient evidence from which the jury could determine, beyond a reasonable doubt, that Allen is guilty of the other charged offenses. *See State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011). The jury was properly comprised of twelve members. *See* A.R.S. § 21-102(A). The trial court instructed the jury on the presumption of innocence, the burden of proof, and the elements of the charged offenses. The court received a presentence report. Ariz. R. Crim. P. 26.4. At sentencing, Allen was given an opportunity to speak and the court stated

on the record the evidence and factors it considered in imposing the sentences. *See* Ariz. R. Crim. P. 26.9, 26.10. The sentences imposed were within the statutory limits. *See* A.R.S. §§ 13-701, -702, -704, -708, -711.

## CONCLUSION

**¶26** We affirm Allen's convictions and sentences.

**¶27** Upon the filing of this decision, defense counsel shall inform Allen of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Allen shall have thirty days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED: AA